Richard L. Tobler, Esq.
RICHARD L. TOBLER, LTD.
Nevada Bar No. 4070
3654 N. Rancho Drive, Suite 102
Las Vegas, Nevada 89130-3179
Telephone: (702)256-6000
Attorney for Defendant, Michael A. Saltman

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| THEODORE TRAPP, on his own behalf and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>BIG POPPA'S, LLC, a Nevada limited liability company d/b/a BADDA BING MEN'S CLUB;  ET AL. | Civil Action No.: 2:09-CV-00995 LDG-PAL<br><br>**DEFENDANT MICHAEL A. SALTMAN'S MOTION TO DISMISS UNDER STANDARD OF SUMMARY JUDGMENT** |

Defendant, MICHAEL A. SALTMAN ("Saltman"), by and through his attorney, Richard L. Tobler, Esq. of the Law Office of Richard L. Tobler, Ltd., pursuant to FRCP (12(b)(6), under standard of Summary Judgment pursuant to FRCP Rule 12(d) and Rule 56, hereby requests dismissal of all claims as against Saltman, or alternatively for summary judgment in his favor. This motion is based upon the points and authorities and exhibits attached hereto, the Complaint, the Affidavit of Saltman attached hereto, as well as any argument of the parties at the time for hearing on this matter, if the Court requests oral argument.

Dated this 22th day of July, 2009.

RICHARD L. TOBLER, LTD.

By:_____
Richard L. Tobler, Esq.
Nevada Bar No. 04070
3654 N. Rancho Drive, Suite 102
Las Vegas, Nevada 89130-3179
(702) 256-6000
Attorney for Defendant, Michael A. Saltman

Richard L. Tobler, Ltd.
3654 North Rancho Drive, Ste.102
Las Vegas, Nevada 89130
(702) 256-6000

## POINTS AND AUTHORITIES

### I.    Nature of the Action and Background.

This action has been brought as a Class Action by the Plaintiff whose chief complaint revolves around cab and limousine drivers receiving "kickbacks" or illegal cash payments for delivering customers to certain adult entertainment clubs.   In his Complaint, Plaintiff alleges that the "illegal scheme is negatively impacting the City of Las Vegas and the State of Nevada in numerous ways." See Complaint, ¶ 9.  Plaintiff has filed this action against multiple and various (but not all) owners and/or operators of adult entertainment night clubs in the Las Vegas Valley ("**Club Defendants**"), as well as various cab and limousine owners and operators allegedly engaging in the provision of transportation services (the "**Transportation Defendants**") to the Club Defendants' businesses.  Plaintiff has asserted eight claims for relief against various Defendants under Nevada's Racketeering Statute, NRS 207.400, as well as a single claim under the Nevada Deceptive Trade Practices Act, NRS 41.600.

### II.    Undisputed Facts.

Defendant Saltman has been served with Summons and Complaint in this Case as a purported "natural person who does business as MINXX." See Complaint, ¶ 24, page 7 of 41. Saltman is a principal to Vista Financial Resources, LLC, a licensed mortgage broker operating in Las Vegas, Nevada ("**Vista**").  See attached Saltman Affidavit at ¶ 3.  In or about February, 2007, Vista was approached by DR Entertainment Group, LLC (hereinafter "DREG"), the then owners of "MINXX Gentlemen's Club" which club was located at 4636 Wynn Road, Las Vegas, Nevada 89103 (hereinafter the "**Club**").   DREG sought junior financing from Vista in the form of a second mortgage loan in the sum of $1,150,000 (the "Loan"), which Loan was to be secured by the Club.  See Saltman Affidavit at ¶ 4. Vista brokered the Loan through a pool of its investors ("**Lenders**"), and the Loan was thereafter negotiated and closed on or about February 14, 2007.  A true and correct copy of the Deed

2

of Trust, Assignment of Rents and Leases, Security Agreement, and Fixture Filing is attached hereto as **Exhibit "A."** After said closing, DREG continued to operate MINXX as a gentlemen's nightclub. See Saltman Affidavit at ¶ 5.

About one year after the Loan closing in February, 2008, DREG defaulted on its Loan obligations to the Lenders. Foreclosure was commenced by the Lenders on or about February 28, 2008. See Saltman Affidavit at ¶ 6. DREG subsequently filed bankruptcy to stay foreclosure, but the effect of the automatic stay was lifted such that Lenders could proceed with the foreclosure on the Club. During mid-June, 2008, the bankruptcy trustee overseeing the DREG bankruptcy administration permanently closed operations of MINXX. Lenders were thereafter permitted to proceed with the lifting of the automatic stay, enabling Lenders' successor in interest to foreclose on the Club. See Saltman Affidavit at ¶ 8 and 10. On or about March 14, 2008, Lenders assigned their interest in and to the DREG Note and Deed of Trust to SC Entertainment #2, LLC, a Nevada limited liability company (hereinafter **"SCE2"**). See Saltman Affidavit at ¶ 9. During early December, 2008, SCE2 caused the Club to be sold at foreclosure sale. A Trustee's Deed recorded December 4, 2008, evidencing SCE2's ownership to the Club is attached hereto as **Exhibit "B."**

Since the foreclosure sale date, the Club has been closed and has never operated while under the legal ownership of SCE2. See Saltman Affidavit at ¶ 11 through 13. Saltman is merely a principal to a member of SCE2. Saltman has never owned title in or operated the Club in his personal capacity. Indeed, SCE2 has never even operated the Club during its ownership and the Club has remained "dark" since the foreclosure sale. Id.

SCE2 currently has the Club for sale without any current intentions of re-opening and operating it pending any sale thereof. See Saltman Affidavit at ¶ 14. Saltman has applied in his personal capacity for a business license, tavern licensing and adult cabaret uses for the Club with Clark County, but only for purposes of retaining such entitlements until the sale of the Club. Otherwise, the entitlements giving value to this property (the Club) would lapse in

3

1   August, 2009. All licensing applications are currently pending with Clark County. The
2   licensing was applied for in Saltman's name, because Saltman is the only principal of SCE2
3   which has in years past been investigated and approved for liquor licensing. SCE2 would
4   have been the applicant, but because there is no intention to operate the Club, it was a much
5   simpler process to obtain approval in Saltman's name only, because of Saltman's prior
6   licensing approvals. Nonetheless, even if the licensing is approved, SCE2 nor Saltman have
7   any current intentions of operating the Club, and as previously referenced, there has been no
8   operation of the Club by either.   See Saltman Affidavit at ¶ 15 and 16.

9   **III.    Argument.**

10

11          A.  **Dismissal under Summary Judgment Standard**.

12          Inasmuch as this Motion to Dismiss is considering documents and evidence outside
13  of the pleadings, Saltman requests treatment of this Motion under a Summary Judgment
14  standard as allowable under FRCP 12(d), which provides:

15          "If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings
16          are presented to and not excluded by the court, the motion must be treated
            as one for summary judgment under Rule 56. All parties must be given a
17          reasonable opportunity to present all the material that is pertinent to the
            motion."

18

19          Inasmuch as Saltman is providing to this Court the attached Exhibits and Affidavit in

20  support hereof, treatment of this Motion as one for Summary Judgment is appropriate.

21          B.     **Summary Judgment Standard.**

22          As the Court is well aware, the purpose of summary judgment is to avoid unnecessary
23  trials when there is no dispute as to the facts before the court. Northwest Motorcycle Ass'n v.
24  U.S. Dep't of Agric., F.3d 1468, 1471 (9th Cir. 1994). The moving party is entitled to summary
25  judgment as a matter of law where, viewing the evidence and the inferences arising therefrom
26  in favor of the non-movant, there are no genuine issues of material fact in dispute. Fed. R. Civ.
27

28                                              4

P. 56(c); <u>Bagdadi v. Nazar</u>, 84 F.3d 1194, 1197 (9th Cir. 1996). Where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. <u>Warren v. City of Carlsbad</u>, 58 F.3d 439, 441 (9th Cir. 1995).

The moving party bears the burden of informing the court of the basis for its motion, together with evidence demonstrating the absence of any genuine issue of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the party opposing the motion may not rest upon the mere allegations or denials of pleadings but must set forth specific facts showing that there is a genuine issue for trial. <u>Anderson v. Liberty Lobby. Inc.</u>, 477 U.S. 242, 248 (1986). In evaluating the appropriateness of summary judgment, three steps are necessary: (1) determining whether a fact is material; (2) determining whether there is a genuine issue for the trier of fact, as determined by the documents submitted to the court; and (3) considering that evidence in light of the appropriate standard of proof. <u>Anderson</u>, 477 U.S. at 248. As to materiality, only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes which are irrelevant or unnecessary will not be considered. Id. Where there is a complete failure of proof concerning an essential element of the nonmoving party's case, all other facts are rendered immaterial, and the moving party is entitled to judgment as a matter of law. <u>Celotex</u>, 477 U.S. at 323. Summary judgment is not a disfavored procedural shortcut, but an integral part of the federal rules as a whole. <u>Id</u>. Clearly, based upon the content of argument below, Defendant Saltman is neither a real party in interest, nor is he or SCE2 a party that warrants remaining in this case.

## C. **Argument**

Here, Saltman seeks dismissal under a summary judgment standard on two basis. First, that he in his individual capacity has no ownership or interest in operating the Club, which is one of many clubs joined in this case by the Plaintiff. It is clear from the Trustee's Deed attached hereto as Exhibit "B" that SCE2 is the title record holder of the Club, and there

5

1 | is no basis for Saltman to be joined in his individual capacity. Second, and more importantly,

2 | it is clearly established that since obtaining ownership of the Club, the Club has been closed,

3 | dark and inoperative, and that Saltman currently has no intention of operating the Club under

4 | SCE2 or any other entity over which he has any degree of control. See Saltman Affidavit at

5 | ¶ 14. Incident to prevailing on its claims, Plaintiff must show that the transportation

6 | Defendants took patrons or members of the public to the Club, and that Club paid the

7 | transportation Defendants and/or their employees under an alleged scheme of paying illegal

8 | kickbacks. However, no cab or limousine driver is going to drop patrons at the Club when its

9 | doors have been locked for six months prior to SCE2 taking title to the Club in December,

10 | 2008. Thus, when there is no operating business to pay the transportation Defendants for

11 | dropping off patrons, the conduct complained of within Plaintiff's complaint cannot have

12 | occurred at this Club during the period in which SCE2 owned the Club. Considering the

13 | evidence submitted in establishing non-operation, it is clear that Saltman nor SCE2 could

14 | engage in the acts complained of for which Plaintiff seeks relief within its Complaint.

15 | D. **Conclusion.**

16 | Based upon the evidence, there is an absence of any genuine material issue of fact as

17 | to Saltman (or SCE2) on the two basis set forth above. Dismissal is therefore appropriate

18 | under these circumstances. On a closed business for the duration of SCE2's ownership (and

19 | before), Plaintiff can show no set of facts giving rise to relief as against Saltman or SCE2, as

20 | there was no basis for transportation Defendants to deliver patrons and receive the kickbacks

21 | alleged. Further, even if any set of facts could be shown, Saltman is not the real party in

22 | interest as he, in his personal capacity has no ownership interest in the Club. Accordingly,

23 | / / /

24 | / / /

25 | / / /

26 | / / /

27 |

28 | 6

1  Defendant Saltman respectfully requests this Court to grant his request for dismissal.

2  Respectfully submitted this 2ᵗʰ day of July, 2009.

3                  RICHARD L. TOBLER, LTD.

4  By: _____

5                Richard L. Tobler, Esq.
              Nevada Bar No. 4070

6                3654 N. Rancho Drive, Suite 102
              Las Vegas, Nevada 89130-3179

7                Tel: (702) 256-6000
              Attorneys for Defendant,

8                *MICHAEL A. SALTMAN*

9

10  ## CERTIFICATE OF MAILING

11      I hereby certify that on the 30th day of July 2009, I served a copy of the foregoing

12  **DEFENDANT MICHAEL A. SALTMAN'S MOTION TO DISMISS UNDER STANDARD OF**

13  **SUMMARY JUDGMENT** upon the parties by depositing a copy of the same in a sealed

14  envelope in the United States Mail, Las Vegas, Nevada, First-Class Postage fully prepaid, and

15  addressed to:

16

17

18  James E. Smyth, Esq.              Jay Edelsen
Kummer Kaempfer Bonner       Rafey Balabanian
  Renshaw & Ferrario            Kamber Edelsen

19  3800 Howard Hughes Parkway, 7th Floor   350 N. LaSalle Street
Las Vegas, Nevada 89169          Suite 130

20  Attorney for Plaintiff            Chicago, IL 60654

21  and that there is a regular communication by mail between the place of mailing and the places

22  so addressed.

23                  _____

24                Cheri Kremenek, an employee of
              Richard L. Tobler, Ltd.

25

26

27

28                      7

# AFFIDAVIT OF MICHAEL A. SALTMAN IN SUPPORT OF MOTION TO DISMISS UNDER STANDARD OF SUMMARY JUDGMENT

STATE OF NEVADA )
                    ) ss.
COUNTY OF CLARK )

**MICHAEL A. SALTMAN**, being duly sworn, deposes and states as follows:

1. That I am over the age of 18, am competent to testify to the matters hereunder, and would so testify if called to do so.

2. That I have been personally named as a Defendant to the case the subject of the Motion to which this affidavit is attached.

3. That I am a principal to Vista Financial Resources, LLC ("Vista"), a duly licensed mortgage brokerage conducting business in and from Las Vegas, Nevada.

4. In or about February, 2007, Vista was approached by DR Entertainment Group, LLC (hereinafter "DREG"), the then owners of "MINXX Gentlemen's Club" which club was located at 4636 Wynn Road, Las Vegas, Nevada 89103 ( the "Club"). DREG sought junior financing from Vista in the form of a second mortgage loan in the sum of $1,150,000 (the "Loan"), which Loan was to be secured by the Club.

5. Vista brokered the Loan through a pool of its investors ("Lenders'), and the Loan was thereafter negotiated and closed on or about February 14, 2007. A true and correct copy of the Deed of Trust, Assignment of Rents and Leases, Security Agreement, and Fixture Filing is attached to the Motion (to which this affidavit is attached) as Exhibit "A." After said closing, DREG continued to operate MINXX as a gentlemen's nightclub.

6. Approximately one year after the Loan closing (about February, 2008), DREG defaulted on its Loan obligations to the Lenders. Foreclosure was commenced by the Lenders on or about February 28, 2008.

7. DREG subsequently filed bankruptcy to stay foreclosure, but the effect of the automatic stay was lifted such that Lenders could proceed with the foreclosure on the Club.

8

8. During mid-June, 2008, the bankruptcy trustee overseeing the DREG bankruptcy administration permanently closed operations of MINXX (the "Closure"). Lenders were thereafter permitted to proceed with the lifting of the automatic stay, enabling Lenders to foreclose on the Club.

9. On or about March 14, 2008, Lenders assigned their interest in and to the DREG note and Deed of Trust to SC Entertainment #2, LLC, a Nevada limited liability company ("SCE2"). I am a trustee to a principal to a member of SCE2.

10. During early December, 2008, SCE2 caused the Club to be sold at foreclosure sale. A Trustee's Deed was recorded December 4, 2008, evidencing SCE2's ownership to the Club. A true and correct copy of said document is attached to the Motion as Exhibit "B."

11. Since the foreclosure sale date, the Club has been closed and has never been re-opened for operation since the Closure by the bankruptcy trustee.

12. I have never held any interest in the Club in my individual or personal name and have not ever done business as "MINXX" as alleged by the Plaintiff. SCE2 is the only entity with which I am affiliated which is the title record holder to the Club. There have been no entities created by SCE2 or myself for the undertaking of the operation of the Club, nor have there been any persons appointed or granted rights to operate the Club.

13. I merely act as a trustee to a principal member of the title record holder to the Club, SCE2 and have never owned title in or operated the Club in my personal capacity. SCE2 has never operated the Club during its ownership and the Club has remained "dark" since the foreclosure sale.

14. SCE2 currently has the Club for sale without any intention of operating it pending the sale thereof. SCE2 nor myself has any current intentions of reopening and operating the Club.

15. In order to preserve the licensing entitlements on the Club, I have applied in my

9

personal capacity for a business license, tavern license and adult cabaret license, but only for purposes of retaining such entitlements until the sale of the Club. Otherwise, the entitlements authorizing the cabaret use giving value to this property (the Club) would lapse in August, 2009.

16. All licensing applications are currently pending with Clark County. The licensing was applied for in my personal name because I am the only principal of SCE2 which has in years past been investigated and approved for liquor licensing. SCE2 would have been the applicant, but because there is no intention to operate the Club, it was a much simpler process to obtain approval in my name only because of my prior prior approvals for similar licensing. Upon approval of the pending licensing, SCE2 nor myself have any current intentions of operating the Club

17. During SCE2's ownership of title to the Club, SCE2 nor myself has ever engaged in compensating cab or limousine drivers for delivery of patrons to the Club, indeed such an act is futile on a closed business.

_____
MICHAEL A. SALTMAN

Subscribed and Sworn to me
this ⟨⟩ day of July, 2009.

_____
NOTARY PUBLIC in and for
said County and State

Janet Collins
Notary Public
State of Nevada
Date Appointment Exp: 10-13-2011
Certificate No: 07-5163-1

10

EXHIBIT A



A. P. N. . 162-19-702-010

20070214-0001037

Fee: $25.00
N/C Fee: $25.00

02/14/2007          09:59:16
T20070026990
Requestor:
    LAND TITLE OF NEVADA

Debbie Conway              KXC
Clark County Recorder    Pgs: 12

WHEN RECORDED MAIL TO:
Vista Financial Resources LLC
2295-A Renaissance Drive
Las Vegas, NV 89119

MAIL TAX STATEMENTS TO:

Loan No.: 0702001

---

# DEED OF TRUST, ASSIGNMENT OF RENTS AND LEASES, SECURITY AGREEMENT, AND FIXTURE FILING

## THIS DOCUMENT CONSTITUTES A FIXTURE FILING IN ACCORDANCE WITH SECTION 104.9502 OF THE NEVADA REVISED STATUTES

DATE:          JANUARY __31__, 2007

TRUSTOR:       DR ENTERTAINMENT GROUP, LLC, a Nevada limited liability
               company

TRUSTOR'S MAILING ADDRESS:     4636 Wynn Road, Las Vegas, Nevada 89103

BENEFICIARY:     THOSE PERSONS AND ENTITIES MORE PARTICULARLY
                 LISTED ON EXHIBIT "A" ATTACHED HERETO AND
                 INCORPORATED HEREIN BY REFERENCE

BENEFICIARY'S ADDRESS: c/o Vista Financial Resources LLC, 2295-A Renaissance
Drive, Las Vegas, Nevada 89119

TRUSTEE: Land Title of Nevada, Inc.

PROPERTY in Clark County, State of Nevada, described as:
See Exhibit "B" attached hereto and made a part hereof (herein called the "Property" or the
"Subject Property").


        THIS DEED OF TRUST, ASSIGNMENT OF LEASES AND RENTS,
SECURITY AGREEMENT, AND FIXTURE FILING (this "Deed of Trust") is made and
entered into as of the year and date first written above by Trustor, in trust to Trustee, for the
benefit of Beneficiary. Trustor irrevocably grants and conveys to Trustee in trust, with power
of sale, the above-described real property and all buildings, improvements and fixtures
located thereon or hereinafter erected thereon, together with the leases, rents, issues, profits,
or income thereof (all of which are hereinafter called "property income"); SUBJECT,
HOWEVER, to the right, power and authority hereinafter given to and conferred upon
Beneficiary to collect and apply such property income; AND SUBJECT TO covenants,
conditions, restrictions, rights-of-way, and easements of record.

THIS DEED OF TRUST IS MADE FOR THE PURPOSE OF SECURING:
        (A) Performance of each agreement of Trustor herein contained, (B) Payment of the
indebtedness evidenced by promissory note(s) of even date herewith, and any extension or
renewal thereof, in the principal sum of __**ONE MILLION ONE HUNDRED FIFTY**
**THOUSAND and NO/100 DOLLARS**__ ($1,150,000.00) executed by DR ENTERTAINMENT
GROUP, LLC, a Nevada limited liability company, as Payor, in favor of Beneficiary or order,
(C) Payment of additional sums and interest thereon which may hereafter be loaned to Trustor, or
its successors or assigns, when evidenced by a promissory note(s) reciting that they are secured
by this Deed of Trust.

TO PROTECT THE SECURITY OF THIS DEED OF TRUST, TRUSTOR AGREES:

1. To keep said property in good condition and repair; not to remove or demolish any building thereon; to complete or restore promptly and in good and workmanlike manner any building which may be constructed, damaged, or destroyed thereon and to pay when due all claims for labor performed and materials furnished therefore; to comply with all laws affecting said property or requiring any alterations or improvements to be made thereon; not to commit or permit waste thereof; not to commit, suffer or permit any act upon said property in violation of law; and do all other acts which from the character or use of said property may be reasonably necessary.

2. To provide, maintain, and deliver to Beneficiary fire insurance policies satisfactory to and with loss payable to Beneficiary. The amount collected under any fire or other insurance policy may be applied by Beneficiary upon any indebtedness secured hereby and in such order as Beneficiary may determine, or at the option of Beneficiary, the entire amount of so collected or any part thereof may be released to Trustor. Such application or release shall not cure or waive any default or waive any default or notice of Trustee's sale hereunder or invalidate any act done pursuant to such notice.

3. To appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee and to pay all costs and expenses of Beneficiary and Trustee, including cost of evidence of title and attorneys' fees in a reasonable sum, in any such action or proceeding in which Beneficiary or Trustee may appear or be named and in any suit brought by Beneficiary to foreclose this Deed of Trust.

4. To pay: before delinquent, all taxes and assessments affecting said property; when due, all encumbrances, charges and liens, with interest, on said property or any part thereof which appear to be prior or superior hereto; all costs, fees and expenses of this Trust, including, without limiting the generality of the foregoing, the fees of Trustee for issuance of any Deed of Partial Release and Partial Reconveyance or Deed of Release and Full Reconveyance and all lawful charges, costs, and expenses in the event of reinstatement of, following default in, this Deed of Trust or the obligations secured, hereby.

Should Trustor fail to make any payment or to do any act as herein provided, then Beneficiary or Trustee, without obligation to do so and without notice to or demand upon Trustor and without releasing Trustor from any obligation hereof, may: make or do the same in such manner and to such extent as either may deem necessary to protect the security hereof, Beneficiary or Trustee being authorized to enter upon said property for such purposes; appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee; pay, purchase, contest or

compromise any encumbrance, charge or lien which in the judgement of either appears to be prior or superior hereto; and in exercising any such powers, pay necessary expenses, employ counsel, and pay counsel's reasonable fees.

5. To pay immediately and without demand all sums expended by Beneficiary or Trustee pursuant to the provisions hereof, together with interest from the date of expenditure at the highest rate as is provided for in the note secured by this Deed of Trust. Any amounts so paid by Beneficiary or Trustee shall become part of the debt secured by this Deed of Trust and a lien on said premises or shall become immediately due and payable at option of Beneficiary or Trustee.


IT IS MUTUALLY AGREED:

6. That any award of damages in connection with any condemnation, or any such taking, or for injury to the property by reason of public use or for damages for private trespass or injury thereto, is assigned and shall be paid to Beneficiary as further security for all obligations secured hereby (reserving unto the Trustor, however, the right to sue therefor and for the ownership thereof subject to this Deed of Trust), and, upon receipt of such moneys, Beneficiary may hold the same as such further security or apply or release the same in the same manner and with the same effect as above-provided for disposition of proceeds of fire or other insurance.

7. That time is of the essence of this Deed of Trust, and that by accepting payment of any sum secured hereby after its due date, Beneficiary does not waive his right either to require prompt payment when due of all other sums so secured or to declare default for failure so to pay.

8. That at any time or from time to time, and without notice, upon written request of Beneficiary and presentation of this Deed of Trust and said note(s) for endorsement, without liability therefor, without affecting the personal liability of any person for payment of the indebtedness secured hereby, without affecting the security hereof for the full amount secured hereby on all property remaining subject hereto and without the necessity that any sum representing the value or any portion thereof of the property affected by the Trustee's action be credited on the indebtedness, the Trustee may: (a) release and reconvey all or any part of said property; (b) consent to the making and recording, or, either, of any map or plat of the property or any part thereof; (c) join in granting any easement thereon; and (d) jam in or consent to any extension agreement or any agreement subordinating the lien, encumbrance or charge hereof.

9. That upon written request of Beneficiary stating that all sums secured hereby have been paid, and upon surrender of this Deed of Trust and said note(s) to Trustee for

cancellation, and upon payment of its fees, Trustee shall release and reconvey, without covenant or warranty, express or implied, the property then held hereunder. The recitals in such reconveyance of any matters or facts shall be conclusive proof of the truthfulness thereof. The grantee in such reconveyance may be described as "the person or persons legally entitled thereto".

10. That as additional security, Trustor hereby gives to and confers upon Beneficiary the right, power and authority, during the continuance of this Trust, to collect the property income, reserving to Trustor the right, prior to any default by Trustor in payment of any indebtedness secured hereby or in performance of any agreement hereunder, to collect and retain such property income as it becomes due and payable.

Upon any such default, Beneficiary may at any time, without notice, either in person, by agent or by a receiver to be appointed by a court, and without regard to the adequacy of any security for the indebtedness hereby secured, enter upon and take possession of said property or any part thereof, sue for or otherwise collect such property income in his own name, including that past due and unpaid, and apply the same, less costs and expenses of operation and collection, including reasonable attorneys' fees, upon any indebtedness secured hereby and in such order as Beneficiary may determine. The entering upon and taking possession of said property, the collection of such property income and the application thereof as aforesaid, shall not cure or waive any default or notice of Trustee's sale hereunder or invalidate any act done pursuant to such notice.

11. That upon default by Trustor in the payment of any indebtedness secured hereby or in performance of any agreement hereunder, Beneficiary may declare all sums secured hereby immediately due and payable by delivery to Trustee of written notice thereof, setting forth the nature thereof, and of election to cause to be sold said property under this Deed of Trust. Beneficiary also shall deposit with Trustee this Deed of Trust, said note(s) and all documents evidencing expenditures secured hereby.

Trustee shall record and give notice of Trustee's sale and shall sell the property at public auction, all in the manner required by law. Any persons, including Trustor, Trustee or Beneficiary, may purchase at such sale. Trustee shall deliver to such purchaser its Deed conveying the property so sold, but without any covenant or warranty, express or implied. Trustor requests that a copy of any notice of Trustee's sale hereunder be mailed to Trustor at his address hereinabove set forth.

After deducting all costs, fees and expenses of Trustee and of this Trust, including cost of evidence of title in connection with sale and reasonable attorney's fees, Trustee shall apply the proceeds of sale in the manner provided by law. To the extent permitted by law, an action may be maintained by Beneficiary to recover a deficiency judgement for any balance due hereunder.

In lieu of sale, pursuant to the power of sale conferred hereby, this Deed of Trust may be foreclosed in the same manner provided by law for the foreclosure of mortgages on real property. Beneficiary shall also have all other rights and remedies available to it hereunder and at law or in equity. All rights and remedies shall be cumulative.

12. That Trustee may resign by mailing or delivering notice thereof to Beneficiary and Trustor. Beneficiary may appoint a successor Trustee in the manner prescribed by law. A successor Trustee herein shall, without conveyance from the predecessor Trustee, succeed to the entire predecessor's title, estate, rights, powers and duties.

13. The term Beneficiary shall mean the owner and holder of the note(s) secured hereby, whether or not named as Beneficiary herein. In this Deed of Trust, whenever the context so requires, the masculine gender includes the feminine and neuter, and the singular number includes the plural.

14. That Trustee accepts this Trust when this Deed of Trust, duly executed and acknowledged, is made a public record as provided by law. Trustee is not obligated to notify any party hereto of a pending sale under any other Deed of Trust or of any action or proceeding in which Trustor, Beneficiary or Trustee shall be a party unless brought by Trustee.

15. That the trust relationship created by this Deed of Trust is limited solely to the creation and enforcement of a security interest in real property. All of Trustee's duties, whether fiduciary or otherwise, are strictly limited to those duties imposed by this instrument.

16. That this Deed of Trust in binding upon and inures to the benefit of all parties hereto, and their respective heirs, legatees, devisees, administrators, executors, successors and assigns.

17. Trustor shall not transfer the Subject Property or any portion thereof or interest therein without the prior written consent of Beneficiary, except as may be specifically permitted elsewhere herein. Beneficiary may grant or deny such consent-in its sale and unfettered discretion and, if written consent should be given, any such transfer shall be subject to this Deed of Trust, and any transferee shall assume all of Trustors obligations hereunder and agree to be bound by all provisions and perform all obligations contained herein. In the event of any such transfer without the written consent of Beneficiary, Beneficiary may, at its option, without demand or notice, declare all sums secured hereby immediately due and payable. Any such transfer without Beneficiary's written consent shall be null and void and of no force or effect whatsoever. Consent to one such transfer shall not be deemed to be a waiver of the right to require consent to future or successive transfers. As used herein, "transfer" shall mean:

(i) the sale, transfer or conveyance of the Subject Property, or any portion thereof or interest therein, including, without limitation, air rights and development rights, whether voluntary, involuntary, by operation of law or otherwise, or the lease of all or substantially all of the Subject Property without Beneficiary's written consent as provided in this Deed of Trust, but shall not include the conveyance of easements, licenses or leases reasonably necessary for the operation of the Improvements, or the repair or replacement of any personal property in the ordinary course of business;

(ii) any transfer by way of security, including the "placing or permitting the placing on the Subject Property of any mortgage, deed of trust, assignment of rents or other security device; and

(iii) if Trustor is a partnership, joint venture, limited liability company, trust, or closely-held corporation, the issuance, sale, conveyance, transfer, disposition or encumbering of more than ten percent (10%) of any class of the currently issued and outstanding capital stock of Trustor or of the beneficial interest of such partnership, joint venture, limited liability company, or trust, or a change of any general partner or any joint venture, or any member of any limited liability company, either voluntarily, involuntarily, or otherwise. For purposes of this section, "closely-held corporation" shall mean any corporation not listed on a national or regional stock exchange.

Notwithstanding the foregoing prohibitions, Beneficiary and Trustor, by their acceptance of this Deed of Trust and the benefits conferred hereby, do hereby acknowledge that:

(A) the interests of Trustor and Beneficiary in the Subject Property are presently subject and subordinate, and shall remain subject and subordinate, to the interests of Surfside Funding Corporation, a California corporation ("Surfside") and its successors and assigns pursuant to that certain Deed of Trust, Security Agreement, Assignment of Leases and Rents and Fixture Financing Statement (the "Surfside Deed of Trust") in favor of Surfside dated September 18, 2006, and recorded on October 10, 2006, as Instrument No. 04794, in Book 20061010, Official Records, Clark County, Nevada; and that

(B) The interests of Trustor (but NOT those of Beneficiary) shall be, from the time of recordation of this Deed of Trust and thereafter continuously until all amounts evidenced hereby and secured thereby have been paid in full, junior and subordinate in priority to that certain Deed of Trust (the "Hawekotte Deed of Trust") in favor of Robert Hawekotte, Esq., ("Hawekotte"), his successors and assigns, dated July 20, 2004, and recorded on July 22, 2004, as Instrument No. 50504, in Book No. 20040722, Official Records, Clark County, Nevada.

18.     Trustor agrees to reimburse Payee and Trustee for all reasonable costs and expenses, including, without limitation, all reasonable attorneys' fees incurred in the enforcement or collection of this Deed of Trust or any document the obligations under which are secured hereby.

19.     This Agreement and the Trustor's rights and duties under it shall be governed by laws of the State of Nevada. If any provision in this Note is deemed unenforceable or illegal by a court competent to so rule, then the offending words will be stricken and all remaining provisions shall remain in full force and effect.

20.     Trustor and any other person or entity who has obligations under this Deed of Trust or any document the obligations under which are secured hereby waives the rights of presentment and notice of dishonor. "Presentment" means the right to require the holder hereof to demand payment of amounts due. "Notice of Dishonor" means the right to require the holder hereof to give notice to other persons that amounts due have not been paid.

21.     Trustor hereby expressly waives any right to a trial by jury in any action or proceeding to enforce or defend any rights under this Deed of Trust or under any amendment, instrument, document or agreement delivered (or which may in the future be delivered) in connection herewith or arising from any relationship existing in connection with this Deed of Trust. Trustor agrees that any such action or proceeding shall be tried before a court and not before a jury.

22.     This Deed of Trust is both a real property Deed of Trust and a "security agreement" within the meaning of the Nevada Uniform Commercial Code under Chapter 104 of the Nevada Revised Statutes (the "Nevada Commercial Code"). The Trust Property includes both real and personal property and all other rights and interest, whether tangible or intangible in nature, of Trustor in the Trust Property. TRUSTOR HEREBY GRANTS TO BENEFICIARY, AS SECURITY FOR THE DEBT, A SECURITY INTEREST IN THE TRUST PROPERTY TO THE FULL EXTENT THAT THE TRUST PROPERTY MAY BE SUBJECT TO THE NEVADA COMMERCIAL CODE OR THE UNIFORM COMMERCIAL CODE OF ANY OTHER STATE OR STATES WHERE THE TRUST PROPERTY IS SITUATED (said portion of the Trust Property is subject to a Commercial Code being called in this Paragraph the "Collateral"). If an Event of Default occurs, - Beneficiary shall have and may exercise immediately and without demand, all rights and remedies granted to a secured party upon default under the Nevada Commercial Code, including the right to take possession of the Collateral, and to take such other measures as Beneficiary may deem reasonably necessary or advisable for the care, protection and preservation of the Collateral. Trustor shall pay to Beneficiary on demand any expenses, including attorneys' fees and expenses, incurred by Beneficiary in protecting its interest in the Collateral and in enforcing its rights to the Collateral. Any notice of sale, disposition or

other intended action by Beneficiary as to the Collateral sent to Trustor at least ten (10) days prior to such action, shall constitute reasonable notice to Trustor. The proceeds of any disposition of the Collateral may be applied by Beneficiary to the payment of the Debt in the priority and proportions as Beneficiary in its discretion shall deem proper.

23. Fixture Filing.    From the date of its recording, this Deed of Trust shall be effect as a financing stqt4ment filed as a fixture filing with respect to all goods constituting part of the Trust Property which are or become fixtures related to the real estate described in this Deed of Trust. For this purpose, the following information is set forth:

(a)    Name and address of Debtor:
        DR ENTERTAINMENT GROUP, LLC, a Nevada limited
        liability company
        4636 Wynn Road
        Las Vegas, Nevada 89103
        Fed. I.D. NO.

(b)    Name and address of Secured party:
        VISTA FINANCIAL RESOURCES LLC, a Nevada limited
        liability company
        2295-A Renaissance Drive
        Las Vegas, Nevada 89119
        Fed. I.D. No. 20-3161949

(c)    This document covers goods that are or are to become fixtures.

(d)    Description of Real Estate:   See Exhibit "**B**".
        Property Commonly Known as:
        4636 Wynn Road
        Las Vegas, Nevada 89103
        (APN: 162-19-702-010

(e)    Owner of Record of Real Estate:
        Robert Susnar and Dwight Chornomud

(f)    This Financing Statement covers Proceeds,


(g)    Products of the Collateral are also covered.

IN WITNESS WHEREOF, Trustor has executed this Deed of Trust as of the day and year first set forth above.

"Trustor":

DR ENTERTAINMENT GROUP, LLC, a member-managed Nevada limited liability company

By: _____
     Robert Susnar, Member


By: _____
     Dwight Chornomud, Member


STATE OF NEVADA        )
                       )    SS.
COUNTY OF CLARK        )

On _____, 2007, before me, Connie Gamble, a Notary Public, ROBERT SUSNAR, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____
Notary Public

Notary Public - State of Nevada
County of Nye
CONNIE GAMBLE
My Appointment Expires
January 14, 2008
No. 00-26220-14 AMENDED


STATE OF NEVADA        )
                       )    SS.
COUNTY OF CLARK        )

On _____, 2007, before me, Connie Gamble, a Notary Public, DWIGHT CHORNOMUD, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____
Notary Public

Notary Public - State of Nevada
County of Nye
CONNIE GAMBLE
My Appointment Expires
January 14, 2008
No. 00-26220-14 AMENDED

LEGAL DESCRIPTION:

THE SOUTH HALF (S ½) OF THE NORTHWEST QUARTER (NW ¼) OF THE
SOUTHWEST QUARTER (SW ¼) OF THE NORTHEAST QUARTER (NE ¼) OF THE
SOUTHEAST QUARTER (SE ¼) OF SECTION 19, TOWNSHIP 21 SOUTH, RANGE 61
EAST, M.D.M.

EXCEPT THE INTEREST IN THE WESTERLY THIRTY (30) FEET OF SAID LAND
CONVEYED TO CLARK COUNTY FOR ROADS, UTILITIES AND OTHER PURPOSES BY
DEED RECORDED NOVEMBER 21, 1967 AS DOCUMENT NO. 671885, OFFICIAL
RECORDS.

APN: 162-19-702-010

THE MICHAEL A. AND SONJA SALTMAN LIVING TRUST 1997, Michael A. Saltman or Sonja Saltman Trustees, an undivided 590,000/1,150,000(approximately 51.3%) interest;

the ELIZABETH H. RUML 2003 REVOCABLE TRUST, Elizabeth H. Ruml, Trustee, an undivided 50,000/1,150,000 (approximately 4.35%) interest;

VISTA FINANCIAL RESOURCES LLC, a Nevada limited liability company, an undivided 100,000/1,150,000 (approximately 8.70%) interest;

SCOTT H. SMITH AND JANET A. DiAMBROSIO-SMITH as joint tenants with rights of survivorship an undivided 10,000/1,150,000 (approximately .87%) interest;

JERRY A. TRENBERTH AND KATHLEEN TRENBERTH as joint tenants with rights of survivorship an undivided 100,000/1,150,000 (approximately 8.70%) interest;

MARVIN DAVID, a married man as his sole and separate property, an undivided 100,000/1,150,000 (approximately 8.70%) interest;

the MONTGOMERY FAMILY TRUST, dated December 12, 1977, Michael J. Montgomery and Madelyn F. Montgomery, Trustees, an undivided 100,000/1,150,000 (approximately 8.70.%) interest;

FIFTY-FIVE LLC, a Nevada limited liability company an undivided 100,000/1,150,000 (approximately 8.70%) interest:

# PROMISSORY NOTE SECURED BY DEED OF TRUST

## INTEREST ONLY PAYMENTS WITH BALLOON PAYMENT

LOAN NUMBER:0702001
U.S. $1,150,000.00

DATE: January 31, 2007

FOR VALUE RECEIVED, the undersigned ___ DR ENTERTAINMENT GROUP LLC, a Nevada limited liability company ___ (hereinafter referred to as "Borrower"),hereby jointly and severally (if Borrower is comprised of more than one person and/or entity) promises to pay to the order of the persons and entities named on Exhibit "A" (collectively, "Payee") to this Promissory Note (the "Note"), at c/o Vista Financial Resources, 2295-A Renaissance Drive, Las Vegas, Nevada 89119, or such other place or places as may be designated by the holder hereof, its successor or assigns, the sum of ONE MILLION ONE HUNDRED FIFTY THOUSAND and NO/100 DOLLARS ($1,150,000.00), and such additional sums (if any) as may be advanced hereon by the Holder, together with interest at the Interest Rate. As used herein, "Interest Rate" shall mean and refer to a rate of interest equal to FIFTEEN and ONE-QUARTER PERCENT (15.25%) per annum, computed on a a 360/365 day basis.

1.   FORM OF PAYMENT

Any and all payments of any nature made or required to be made under this Note shall be made in lawful money of the United States collectible on the date of payment.

2.   REQUIRED PAYMENTS

As used in this paragraph, "Monthly Anniversary Date" shall (notwithstanding any other date appearing elsewhere in this Promissory Note) mean the numeric date in each calendar month which is the same numeric date as the date on which the VFR Deed of Trust (as such term is hereinafter defined) is recorded in the Office of the County Recorder of Clark County, Nevada (the "Recordation Date"). By way of example only, if the Recordation Date is February 15, 2007, the Monthly Anniversary Date shall mean and refer to the 15th day of any calendar month; accordingly, March 15, 2007, would be the First Monthly Anniversary Date and February 15, 2008 would be the Twelfth Monthly Anniversary Date.

Beginning with First Monthly Anniversary Date, and continuing thereafter on each successive Monthly Anniversary Date to and including the Maturity Date, Borrower shall pay to Payee a sum equal to all interest accrued by theretofore unpaid hereon.

In addition to the foregoing, on the Maturity Date, the entire unpaid principal balance of this Note, together with any and all interest accrued but unpaid thereon, shall be due and payable. The Maturity Date hereunder shall mean the twelfth (12th) Monthly Anniversary Date of the Recordation Date.

3.    PREPAYMENT
Borrower shall have no right to prepay the principal of this Note or any portion thereof prior to that the sixth (6th) Monthly Anniversary Date. Thereafter, Borrower shall have the right to prepay all or any portion of the then unpaid principal amount of this Note at any time without notice, premium or penalty.

4.    NOTE SECURED BY DEED OF TRUST / JUNIOR PRIORITY
This Note is secured *inter alia* by a Deed of Trust, of even date herewith by and among Maker, as trustor, Payee, as beneficiary, and   LAND TITLE OF NEVADA, INC.   , as trustee (the " VFR Deed of Trust").

The VFR Deed of Trust is subordinate and junior in priority to the interests created pursuant to that certain Deed of Trust, Security Agreement, Assignment of Leases and Rents and Fixture Financing Statement (the "Surfside Deed of Trust") in favor of Surfside Funding Corporation ("Surfside") dated September 18, 2006, and recorded on October 10, 2006, as Instrument No. 04794, in Book 20061010, Official Records, Clark County, Nevada.

The VFR Deed of Trust shall be, from the time of its recordation and thereafter continuously until all amounts evidenced hereby and secured thereby have been paid in full, senior and superior in priority to that certain Deed of Trust (the "Hawekotte Deed of Trust") in favor of Robert Hawekotte, Esq., ("Hawekotte") dated July 20, 2004, and recorded on July 22, 2004, as Instrument No. 50504, in Book No. 20040722, Official Records, Clark County, Nevada

5.    DEFAULT RATE
Anything herein to the contrary notwithstanding, during any period of any default under the terms of this Note or any security instrument securing this debt (and including, without limitation, at all times after the Maturity Date), interest on the entire principal indebtedness then outstanding shall be charged, without notice to Borrower, or any endorser or any guarantor, at the rate of _six_ percent (6.00%) per annum higher than the Interest Rate otherwise prescribed herein (hereinafter referred to as the "Default Rate"). Without limiting the generality of the foregoing, the Default Rate shall, automatically and without notice, immediately become the interest rate payable hereunder as of the maturity date of this Note.

6.    LATE CHARGE
In the event any payment (including without limitation the final payment due upon maturity) required hereunder is not received by Payee within five (5) calendar days after the due date therefore, a late charge equal to ten percent (10%) of each overdue payment (whether at the Interest Rate or the Default Rate) shall be charged for the purpose of defraying the expenses incident to handling said delinquent payment(s). There shall be only one late charge per delinquent payment.

## 7. APPLICATION OF PAYMENTS

Payments shall be computed monthly and applied: first, to reimbursement of any expenses incurred by the holder hereof for which Maker is liable; second, to any late charges accrued but unpaid hereunder; third, to all interest accrued but theretofore unpaid hereunder (at the Interest Rate or the Default Rate, as applicable); and finally, the remainder to the then unpaid principal balance.

## 8. DEFAULT TERMS AND CONDITIONS

It is agreed that time is of the essence of this Note and all documents given to evidence or secure it. In the event of default under the terms of this Note, the VFR Deed of Trust, or other instrument or agreement evidencing or securing this debt [if any], or under the terms of the Surfside Deed of Trust, or any other document given to evidence or secure either or both of the Senior Loans, the holder of this Note may, at its option, declare all the remainder of said debt evidenced hereby immediately due and payable, and any failure to exercise said option shall not constitute a waiver of the right to exercise the same at any other time, nor shall such failure to exercise the option be construed as any form of acceptance of any said default. Notice of the exercise of said option is hereby waived. In the event of such default, interest shall accrue at the Default Rate stipulated in Paragraph 5 above.

## 9. COSTS

Borrower agrees to reimburse Payee for all reasonable costs and expenses, including, without limitation, all reasonable attorneys' fees incurred in the enforcement or collection of this Promissory Note or any document securing the performance of the obligation of Maker under this Promissory Note.

## 10. CHOICE OF LAW; EFFECT OR INVALIDITY OF PROVISIONS

This Agreement and the Borrower's rights and duties under it shall be governed by laws of the State of Nevada. If any provision in this Note is deemed unenforceable or illegal by a court competent to so rule, then the offending words will be stricken and all remaining provisions shall remain in full force and effect.

## 11. WAIVERS

Borrower and any other person or entity who has obligations under this Promissory Note waives the rights of presentment and notice of dishonor. "Presentment" means the right to require the holder hereof to demand payment of amounts due. "Notice of Dishonor" means the right to require the holder hereof to give notice to other persons that amounts due have not been paid.

## 12. WAIVER OF RIGHT TO A JURY TRIAL

Borrower and Payee hereby expressly waive any right to a trial by jury in any action or proceeding to enforce or defend any rights under this Note or under any amendment, instrument, document or agreement delivered (or which may in the future be delivered) in connection herewith or arising from any relationship existing in connection with this Note. Borrower and Payee agree that any such action or proceeding shall be tried before a court and not before a jury.

13. **PROHIBITION ON TRANSFER OR FURTHER ENCUMBRANCE**

Maker shall not transfer the Subject Property (as defined in the VFR Deed of Trust) or any portion thereof or interest therein without the prior written consent of holder hereof (provided, however, that the present existence and continuation in its existing form of the Surfside Deed of Trust and the Hawekotte Deed of Trust shall not be deemed to be a violation of this Section so long as the Hawekotte Deed of Trust becomes and remains at all times junior and subordinate in priority to the VFR Deed of Trust. The VFR Deed of Trust contains a "Due On Sale" Clause.

14. **ENTIRE NOTE; CAPTIONS**

This Note together with all other documents executed by Maker contemporaneously herewith constitutes the entire agreement between Maker and Payee, and replaces any representations or statements made prior thereto. This Note was arranged and supplied with paragraph titles in an effort to make it easier to read and understand. The paragraph titles are not part of the Note and do not modify it.

IN WITNESS WHEREOF, the undersigned has executed this Promissory Note as of the year and date first above written.

DR ENTERTAINMENT GROUP, a member-managed Nevada limited liability company

By: _____
      Dwight Chornomud
      Member

By: _____
      Robert Susnar
      Member

THE MICHAEL A. AND SONJA SALTMAN LIVING TRUST 1997, Michael A. Saltman or Sonja Saltman Trustees, an undivided 590,000/1,150,000(approximately 51.3%) interest;

the ELIZABETH H. RUML 2003 REVOCABLE TRUST, Elizabeth H. Ruml, Trustee, an undivided 50,000/1,150,000 (approximately 4.35%) interest;

VISTA FINANCIAL RESOURCES LLC, a Nevada limited liability company, an undivided 100,000/1,150,000 (approximately 8.70%) interest;

SCOTT H. SMITH AND JANET A. DiAMBROSIO-SMITH as joint tenants with rights of survivorship an undivided 10,000/1,150,000 (approximately .87%) interest;

JERRY A. TRENBERTH AND KATHLEEN TRENBERTH as joint tenants with rights of survivorship an undivided 100,000/1,150,000 (approximately 8.70%) interest;

MARVIN DAVID, a married man as his sole and separate property, an undivided 100,000/1,150,000 (approximately 8.70%) interest;

the MONTGOMERY FAMILY TRUST, dated December 12, 1977, Michael J. Montgomery and Madelyn F. Montgomery, Trustees, an undivided 100,000/1,150,000 (approximately 8.70.%) interest;

FIFTY-FIVE LLC, a Nevada limited liability company an undivided 100,000/1,150,000 (approximately 8.70%) interest;

EXHIBIT **B**

APN: 162-19-702-010

RETURN/MAIL TAX STATEMENTS TO:

SC ENTERTAINMENT #2, LLC
C/O VISTA FINANCIAL RESOURCES
2295-A RENAISSANCE DRIVE
LAS VEGAS, NV. 89119

20081204-0001444
Fee: $17.00     RPTT: $5,865.00
N/C Fee: $0.00
12/04/2008        10:22:04
T20080299009
Requestor:
 NEVADA TITLE LAS VEGAS
Debbie Conway          DOM
Clark County Recorder     Pgs: 5

TRUSTEE'S DEED UPON SALE

FCL NO. A8-02-0020 FCL    R.P.T.T $  5,865.00

THIS INDENTURE, made DECEMBER 3, 2008 between NEVADA TITLE
COMPANY a Nevada Corporation, as Trustee as hereinafter stated,
herein called Trustee, and

SC ENTERTAINMENT #2, LLC, A NEVADA LIMITED LIABILITY COMPANY

herein called Grantee, WITNESSTH:

WHEREAS, DR ENTERTAINMENT GROUP, LLC, A NEVADA LIMITED
LIABILITY COMPANY   by Deed of Trust dated JANUARY 31, 2007
and recorded on FEBRUARY 14, 2007 in Book 20070214 of Official
Records, as Document No. 0001037 in the Office of the County
Recorder of CLARK COUNTY, State of Nevada, did grant and convey
to said Trustee, upon the trusts therein expressed, the
property hereinafter described, among other uses and purposes
to secure the payment of that certain promissory note and
interest according to the terms thereof, and other sums of
money advanced, with interest thereon, to which reference is
hereby made, and,

WHEREAS, breach and default was made under the terms of said
Deed of Trust in the particulars set forth in the Notice of
said Breach and Default hereinafter referred to, to which
reference is hereby made; and

WHEREAS, on FEBRUARY 21, 2008 the then Beneficiary, or holder
of said note did execute and deliver to the Trustee written
Declaration of Default and demand for sale and thereafter there
was filed for record on FEBRUARY 28, 2008 in the office of the
County Recorder of CLARK County, Nevada a Notice of breach and
default and of election to cause the Trustee to sell said
property to satisfy the obligation secured by said Deed of
Trust, which Notice was recorded in Book 20080228 as Document
No. 0000155 of Official Records of said County, and,

WHEREAS, Trustee in consequence of said election, declaration
of default, and demand for sale, and in compliance with said

APN: 162-19-702-010

RETURN/MAIL TAX STATEMENTS TO:

SC ENTERTAINMENT #2, LLC
C/O VISTA FINANCIAL RESOURCES
2295-A RENAISSANCE DRIVE
LAS VEGAS, NV. 89119

TRUSTEE'S DEED UPON SALE

FCL NO. A8-02-0020 FCL    R.P.T.T $  5,865.00

THIS INDENTURE, made DECEMBER 3, 2008 between NEVADA TITLE
COMPANY a Nevada Corporation, as Trustee as hereinafter stated,
herein called Trustee, and

SC ENTERTAINMENT #2, LLC, A NEVADA LIMITED LIABILITY COMPANY

herein called Grantee, WITNESSTH:

WHEREAS, DR ENTERTAINMENT GROUP, LLC, A NEVADA LIMITED
LIABILITY COMPANY    by Deed of Trust dated JANUARY 31, 2007
and recorded on FEBRUARY 14, 2007 in Book 20070214 of Official
Records, as Document No. 0001037 in the Office of the County
Recorder of CLARK County, State of Nevada, did grant and convey
to said Trustee, upon the trusts therein expressed, the
property hereinafter described, among other uses and purposes
to secure the payment of that certain promissory note and
interest according to the terms thereof, and other sums of
money advanced, with interest thereon, to which reference is
hereby made, and,

WHEREAS, breach and default was made under the terms of said
Deed of Trust in the particulars set forth in the Notice of
said Breach and Default hereinafter referred to, to which
reference is hereby made; and

WHEREAS, on FEBRUARY 21, 2008 the then Beneficiary, or holder
of said note did execute and deliver to the Trustee written
Declaration of Default and demand for sale and thereafter there
was filed for record on FEBRUARY 28, 2008 in the office of the
County Recorder of CLARK County, Nevada a Notice of breach and
default and of election to cause the Trustee to sell said
property to satisfy the obligation secured by said Deed of
Trust, which Notice was recorded in Book 20080228 as Document
No. 0000155 of Official Records of said County, and,

WHEREAS, Trustee in consequence of said election, declaration
of default, and demand for sale, and in compliance with said

Deed of Trust and with the statutes in such cases made and provided, made and published for more than twenty (20) days before the date of sale therein fixed in a newspaper of general circulation printed and published in the county and state in which the premises to be sold is situated, Notice of Sale as required by law, containing a correct description of the property to be sold and stating that the Trustee would under the provisions of said Deed of Trust sell the property therein and herein described at public auction to the highest bidder for cash in lawful money of the United States on DECEMBER 3, 2008 at the hour of 10:00 AM of said day, at the front entrance to Nevada Legal News, 930 S. Fourth Street, in the city of Las Vegas, County of Clark, State of Nevada, and,

WHEREAS three true and correct copies of said Notice were posted in three of the most public places in the County of CLARK, State of Nevada, in which said sale was noticed to take place, for not less than twenty days before the date of sale therein fixed, and,

WHEREAS, compliance having been made with all of the statutory provisions of the State of Nevada and with all of the provisions of said Deed of Trust as to the acts to be performed and notices to be given and in particular, full compliance having been made with all requirements of law regarding the service of notices required by statute, and with the Servicemembers Civil Relief Act (108 P.L. 189; 117 Stat. 2835; 2003 Enacted H.R. 100), said Trustee, at the time and place did then and there at public auction sell the property hereinafter described to the said Grantee for the sum of ONE MILLION ONE HUNDRED FIFTY THOUSAND AND NO/100 DOLLARS ($1,150,000.00), said Grantee being the highest and best bidder therefore.

NOW, THEREFORE, Trustee in consideration of the premises recited and the sum herein mentioned bid and paid by the Grantee the receipt whereof is hereby acknowledged, and by virture of these premises, does GRANT AND CONVEY, but without warranty or covenants, express or implied, unto the said Grantee all right and interest under said Deed of Trust in that certain property situate in the County of CLARK State of Nevada, described as follows:

SEE EXHIBIT "A" ATTACHED HERETO AND BY REFERENCE MADE A PART HEREOF

IN WITNESS WHEREOF the said NEVADA TITLE COMPANY, has this day, caused its corporate name to be affixed hereto and this instrument to be executed by its authorized officers.

DATED: DECEMBER 3, 2008

NEVADA TITLE COMPANY, Trustee

BY: _____
SUE DUDZINSKI, VICE PRESIDENT

BY _____
TROY LOCHHEAD, VICE PRESIDENT

STATE OF: ___Nevada___

COUNTY OF: ___Clark___

This instrument was acknowledged before me on
___December 3, 2008___ by ___Sue Dudzinski and Troy Lochhead___
___as Vice Presidents of Nevada Title Company___

Signature: _____
(Notary Public)

N. MICHELE DOBAR
Notary Public State of Nevada
No. 99-50932-1
My appt. exp. Nov. 7, 2010

(A8-02-0020 FCL / Trustee's Deed)

## EXHIBIT "A"

### LEGAL DESCRIPTION

THE SOUTH HALF (S ½ ) OF THE NORTHWEST QUARTER (NW ¼ ) OF THE
SOUTHWEST QUARTER (SW ¼ ) OF THE NORTHEAST QUARTER (NE ¼ ) OF
THE SOUTHEAST QUARTER (SE ¼ ) OF SECTION 19, TOWNSHIP 21 SOUTH,
RANGE 61 EAST, M.D.M., CLARK COUNTY, NEVADA.

EXCEPT THE INTEREST IN THE WESTERLY THIRTY (30) FEET OF SAID
LAND CONVEYED TO CLARK COUNTY BY DEED RECORDED NOVEMBER
21, 1967 IN BOOK 836 AS DOCUMENT NO. 671885 OF OFFICIAL RECORDS.

TOGETHER WITH THE PERSONAL PROPERTY AND RIGHTS DESCRIBED IN
THE DEED OF TRUST IN WHICH THE BENEFICIARY WAS GRANTED A LIEN
AND SECURITY INTEREST (INCLUDING, WITHOUT LIMITATION, GOODS,
MATERIALS, SUPPLIES, FIXTURES, EQUIPMENT, MACHINERY, FURNITURE
AND FURNISHINGS; INCOME, RECEIPTS, REVENUES, RENTS, ISSUES AND
PROFITS OF THE ABOVE DESCRIBED REAL PROPERTY; AND DOCUMENTS,
INSTRUMENTS, AGREEMENTS, PERMITS, LICENSES, CLAIMS, CAUSES OF
ACTION, BOOKS, RECORDS, AND FILES RELATED TO THE ABOVE
DESCRIBED REAL PROPERTY)

# State of Nevada
# Declaration of Value

1. Assessor Parcel Number(s)
   a) 162-19-702-010
   b) _____
   c) _____
   d) _____
   _____
   _____
   _____

2. Type of Property:

| | | | | |
|---|---|---|---|---|
| ☐ | a) Vacant Land | ☐ | b) Sgl. Fam. Residence | |
| ☐ | c) Condo/Twnhse | ☐ | d) 2-4 Plex | |
| ☐ | e) Apt. Bldg. | ☒ | f) Comm'l/Ind'l | |
| ☐ | g) Agricultural | ☐ | h) Mobile Home | |
| ☐ | i) Other | | | |

<table>
<tr><td colspan="2"><strong>FOR RECORDERS'S OPTIONAL USE ONLY</strong><br>Document/Instrument #: _____<br>Book:_____ Page _____<br>Date of Recording:_____<br>Notes:_____</td></tr>
</table>

3. Total Value/Sales Price of Property ........ $1,150,000.00

   Deed in Lieu of Foreclosure Only (value of property) .......

   Transfer Tax Value: ........ $1,150,000.00

   Real Property Transfer Tax Due ........ $5,865.00

4. **If Exemption Claimed:**

   a. Transfer Tax Exemption, per NRS 375.090, Section: _____

   b. Explain Reason for Exemption: _____

5. Partial Interest: Percentage being transferred: 100 %

   The undersigned declare(s) and acknowledges, under penalty of perjury, pursuant to NRS 375.060 and NRS 375.110, that the information provided is correct to the best of their information and belief, and can be supported by documentation if called upon to substantiate the information provided herein. Furthermore, parties agree that disallowance of any claimed exemption, or other determination of additional tax due, may result in a penalty of 10% of the tax due plus interest at 1% per month. Pursuant to NRS 375.030, the Buyer and Seller shall be jointly and severally liable for any additional amount owned.

   Signature: _____ Capacity: TRUSTEE

   Signature: _____ Capacity: Foreclosing Beneficiary

| SELLER (GRANTOR) INFORMATION | BUYER (GRANTEE) INFORMATION |
|---|---|
| (REQUIRED) | (REQUIRED) |
| Print Name: Nevada Title Company | Print Name: SC Entertainment #2, LLC, a Nevada limited liability company |
| Address: 2500 N. Buffalo Drive, Suite 150 | Address: C/O 2295-A Renaissance Dr |
| City/State/Zip: Las Vegas, NV 89128 | City/State/Zip: Las Vegas, NV 89119 |

**COMPANY/PERSON REQUESTING RECORDING (required if not seller or buyer)**

| | | | |
|---|---|---|---|
| Print Name: Nevada Title Company | | Esc. #: A8-02-0020-FCL | |
| Address: 2500 N. Buffalo Drive, Suite 150 | | | |
| City: Las Vegas | State: NV | Zip: 89128 | |

(AS A PUBLIC RECORD THIS FORM MAY BE RECORDED/MICROFILMED)