James E. Smyth II
Email: jsmyth@kkbrf.com
Kaempfer Crowell Renshaw
Gronauer & Fiorentino
3800 Howard Hughes Parkway, Seventh Floor
Las Vegas, Nevada 89169
Tel: 702.792.7000
Fax: 702.796.7181

Jay Edelson (ARDC No. 6239287) (*Admitted Pro Hac Vice*)
Email: jedelson@kamberedelson.com
Rafey Balabanian (ARDC No. 6285687) (*Admitted Pro Hac Vice*)
Email: rbalabanian@kamberedelson.com
KAMBEREDELSON LLC
350 North LaSalle, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

*Attorneys for Plaintiff*
THEODORE TRAPP and the putative class

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| THEODORE TRAPP, on his own behalf and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BIG POPPA'S, LLC, a Nevada limited liability company d/b/a BADDA BING MEN'S CLUB, *et al*.,<br><br>Defendants. | Case No. 2:09-cv-00995<br><br>**PLAINTIFF'S RESPONSE IN OPPOSITION TO THE MOTION TO DISMISS OF DEFENDANTS DÉJÀ VU SHOWGIRLS OF LAS VEGAS, LLC, LITTLE DARLINGS OF LAS VEGAS, LLC, AND LAS VEGAS ENTERTAINMENT, LLC UNDER RULE 12(b)(6) AND THE MOTION TO DISMISS UNDER RULE 12(b)(6) OR FOR MORE DEFINITE STATEMENT UNDER RULE 12(e) OF DEFENDANT D.2801 WESTWOOD, INC.**<br><br>**Honorable Lloyd D. George**<br><br>**Magistrate Judge Peggy A. Leen** |

KAEMPFER CROWELL RENSHAW
GRONAUER & FIORENTINO
Seventh Floor
3800 Howard Hughes Parkway
Las Vegas, Nevada 89169

1

Dockets.Justia.com

## I. Introduction

This case involves an open, notorious, widespread and illegal practice taking place in the City of Las Vegas. Defendants, certain adult entertainment clubs (referred to in the Complaint as "Club Defendants"), have for years been routinely paying kickbacks to participating taxi and limousine drivers in Las Vegas ("Driver Defendants"). In return for these illicit payments, the Driver Defendants divert paying customers (like Plaintiff) from their intended destination to the Clubs that are willing to make these payments. Upon arrival at the Clubs that paid for the diversion, each proposed class member must pay an inflated cover charge to enter the Club which is directly attributable to the kickback just paid out. However, these inflated charges, among other charges billed to customers of the Club Defendants, allow the Club Defendants to recoup the bribes and kickbacks paid to the Driver Defendants. Club Defendants get customers they otherwise might not get, Driver Defendants receive monies they otherwise would not receive, and only Plaintiff and others similarly situated to him get skinned. This is the enterprise that supports Plaintiff's civil RICO claims and the activity that is the basis of his claim for relief under Nevada's Deceptive Trade Practices statute. Plaintiff Theodore Trapp challenges these actions based upon his personal experience and on behalf of those thousands of others whose experience was and is essentially identical to his.

The instant action was filed on June 2, 2009. Both the Club Defendants and the Driver Defendants have brought motions to dismiss. However, Plaintiff and the Driver Defendants have reached agreement to voluntarily dismiss the Driver Defendants from this action. Plaintiff has therefore filed a motion for voluntary dismissal (Dkt. No. 198), which is currently pending before the Court. As the motions to dismiss of the Driver Defendants have been rendered moot by the requested dismissal, this response is confined to the arguments raised by Defendants Déjà Vu Showgirls of Las Vegas LLC, Little Darlings of Las Vegas, LLC and Las Vegas Entertainments LLC d/b/a Larry Flynt's Hustler Club's Motion To Dismiss Under Rule 12(b)(6) (Dkt. No. 77) ("**Déjà vu Motion to Dismiss**" or "Déjà Vu MTD"); and Defendant D.2801 Westwood, Inc. D/B/A/ Treasures' Motion To Dismiss Under Rule 12(B)(6) Or For A More

Definite Statement Under Rule 12(E), (Dkt. No. 175) ("**Treasures Motion to Dismiss**" or "Treasures MTD").

*Defendants' Position:*

The Motions to Dismiss filed by Club Defendants D.2801 Westwood, Inc. d/b/a Treasures ("Treasures") (Dkt. No. 175) and Déjà Vu Showgirls of Las Vegas, LLC, Little Darlings of Las Vegas, LLC, and Las Vegas Entertainment, LLC (collectively "Déjà Vu") (Dkt. No. 77) essentially argue as follows:

- The Complaint does not meet Rule 9(b)'s heightened pleading requirement and therefore should be dismissed;
- Plaintiff lacks standing to pursue his claims against the moving defendants since he does not allege any direct dealings with them; and
- Plaintiff fails to plead numerosity adequately and that the claims of absent class members arise out of the same transaction or occurrence.

*Plaintiff's Position:*

- Plaintiff's claims—and specifically the predicate acts that give rise to his Civil RICO claims—do not sound in fraud and therefore need not be pleaded with heightened specificity. Among other things, Plaintiff's Complaint alleges that the Defendants violated NRS 207.360(9) "Taking property from another under circumstances not amounting to robbery." Fraud is not an element of this cause of action;
- To the extent certain allegations sound in fraud, Plaintiff's allegations meet Rule 9(b)'s heightened pleading requirement, especially under a less stringent application of the Rule, which is appropriate under these circumstances;
- Plaintiff has standing to pursue his claims against the moving defendants by virtue of the juridical link doctrine and the fact that his claims and those of the absent class members arise out of the same series of occurrences; and

- Whether this case may be maintained as a class action—and specifically whether Plaintiff sufficiently pleaded numerosity—are not ripe for determination on a motion to dismiss.

*****

In the end, the Defendants' attacks amount to little more than an attempt to force the Plaintiff to prove his claims at the pleading stage. This, of course, is contrary to federal law and not required of any litigant. The motions to dismiss should be denied.

## II. Facts Underlying the Complaint

This class action involves a well-established illegal practice taking place in the City of Las Vegas that consists of adult entertainment clubs paying taxi and limousine drivers "kickbacks" to divert customers to their respective clubs. Defendant Clubs then charge customers inflated cover charges in order to recoup the Club's losses from the kickbacks. (*See* Compl. ¶¶ 1-9.) Plaintiff in this case, Theodore Trapp ("Mr. Trapp" or "Trapp"), was one of countless victims taken in by this scheme. His experience is almost identical to that of thousands of other visitors to Las Vegas every year.

On or around January 17, 2009, Theodore Trapp boarded a taxi at Caesar's Palace Hotel and Casino. (Compl. ¶ 64.) Mr. Trapp asked the driver to take him to "Play it Again Sam," a gentlemen's club located at 4120 Spring Mountain Rd., Las Vegas, Nevada. (Compl. ¶ 65.) The driver then told Mr. Trapp that "Play it Again Sam" was "kinda sketchy," and that there are other, better clubs in Las Vegas. (Compl. ¶ 66.) In fact, these statements were made in order to divert Mr. Trapp from his chosen destination and instead go to the club owned by Defendant Spearmint Rhino. (Compl. ¶ 69.) Relying on the driver's representations, Mr. Trapp was delivered to Spearmint Rhino where he was charged an inflated "cover charge" to enter the club. (Compl. ¶ 73.) Spearmint Rhino concealed from Mr. Trapp the fact that the "cover charge" he paid would actually go straight into the pocket of the taxi driver who just diverted him to the club. (Compl. ¶ 73.)

Defendant Clubs routinely pay taxi and limousine drivers money, sometimes up to $100, to deliver customers to their respective clubs. (Compl. ¶¶ 2-3 51.) Defendant Clubs frequently charge customers an inflated "cover charge" to recoup the money they paid to the taxi or limousine driver. (Compl. ¶¶ 53, 91.) Defendant clubs employ other methods to recoup their losses from paying illegal kickbacks, including charging customers excessively high prices for cheap or watered-down liquor, falsifying customers' bills, and sometimes brazenly demanding payment from customers for services never rendered. (Compl. ¶ 55.) This practice, which is an "open secret" in Las Vegas, has been reported by various news outlets, as well as by insiders in the industry. (Compl. ¶¶ 56-58, 60.)

State and local legislatures have also taken notice of this behavior, as laws have been passed prohibiting taxi drivers from diverting customers, as well as laws that prohibit establishments that serve liquor from "tipping" drivers for delivering customers. (Compl. ¶¶ 3,6.) It is estimated that Defendant Clubs pay out nearly $40 million dollars a year in illegal kickbacks. (Compl ¶ 52.) Thus, the conduct complained of by Mr. Trapp has been replicated tens of thousands of times on an annual basis (Compl. ¶ 88.) As laid out in the Complaint, each of the Defendant Clubs engages in this kickback scheme, and also takes money from consumers in numerous unlawful methods. (Compl. ¶¶ 53-55.)

### III. Legal Standard

A motion to dismiss pursuant to Fed R. Civ. P. 12(b)(6) is a challenge to the sufficiency of the pleadings set forth in the complaint. Dismissal under Rule 12(b)(6) is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.,* 901 F.2d 696, 699 (9th Cir. 1990). In considering a motion to dismiss for failure to state a claim, the court generally accepts as true the allegations of the complaint in question, construes the pleading in the light most favorable to the party opposing the motion, and resolves all doubts in the pleader's favor. *Lazy Y. Ranch LTD v. Behrens,* 546 F.3d 580, 588 (9th Cir. 2008); *Jenkins v. McKeithen,* 395 U.S. 411, 421, *reh'g denied,* 396 U.S. 869 (1969).

To survive a motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 547 (2007). A claim has facial plausibility, "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949 (2009). "[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service,* 572 F.3d 962, 969 (9th Cir. 2009).

### IV.  Rule 8 Must be the Starting Point for Evaluating the Legal Sufficiency of the Complaint

The Federal Rules of Civil Procedure require only that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Moss*, 572 F.3d at 968. The Rules "do not require a claimant to set out in detail the facts upon which he bases his claim." *U.S. v. LSL Biotechnologies*, 379 F.3d 672, 699-700 (9th Cir. 2004). The focus is whether the challenged pleadings "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007), quoting *Twombly*, 550 U.S. at 555. The proper test is whether the complaint "contain[s] either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Financial Sec Assur. Inc. v. Stephens*, 500 F.3d 1276, 1282-83 (11th Cir. 2007).

The applicability of Rule 9(b) hinges not on the elements of the claim but rather on the nature of the allegations themselves: "Rule 9(b) applies to 'averments of fraud' in all civil cases in federal district court ... in cases in which fraud is not an essential element of the claim, Rule 9(b) applies, but only to particular averments of fraud." *In re Charles Schwab Corp. Sec. Litig.*, No. C 08-01510, 2009 WL 262456, *4 (N.D. Cal. Feb. 4, 2009) (citing *Vess v. Ciba-Geigy Corp.*, 317 F.3d 1097, 1103 (9th Cir. 2003)). Accordingly, "a claim that 'sounds in fraud'—in other words, one that is premised upon a course of fraudulent conduct—can implicate Rule 9(b)'s

heightened pleading requirements." *Vulcan Gulf, LLC v. Google, Inc.*, No. 07 C 3371, 2008 WL 2959951, * 6 (N.D. Ill. 2008).

V. **The Predicate Acts of Plaintiff's Civil RICO Claims Do Not Sound in Fraud and Therefore Need Not Be Pleaded With Heightened Specificity**

Defendants' assertion that the heightened standards of Rule 9 apply to all RICO claims is misplaced. Normal Rule 8 pleading rules apply in RICO actions except where the predicate acts sound in fraud, which is typical in cases involving mail fraud, wire fraud, and securities fraud. However, it is only if the predicate acts sound in fraud that a plaintiff must meet the heightened pleading requirements imposed by Fed. R. Civ. P. 9. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1104 (9th Cir. 2003); *see also* 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1251.1 n. 13 (citing cases finding that fraud claims brought under RICO must comply with pleading requirements of Rule 9(b)).

While many RICO cases sound in fraud or some species of fraud or deceit, the specific predicate act alleged *in this action*, namely NRS 207.360 (9), do not. Indeed NRS 207.360 outlaws "[t]aking property from another under circumstances not amounting to robbery." Fraud is not an element of this cause of action. It is true the Complaint alleges that the Driver enterprises/syndicates made false representations to the Plaintiffs, but the predicate acts themselves—the taking of property not amounting to robbery—are neither based on, nor sounds in, fraud. Consequently, the elements of the predicate acts do not require the Plaintiff to demonstrate any variation of deceit, misrepresentation, or reliance, the hallmarks of fraud, to prove the claim—only that property was taken from another under circumstances not amounting to robbery. There should be no doubt that Plaintiff has pleaded as much.

The case of *Williams v. Mohawk Indus. Inc.*, 314 F.Supp.2d 1333, 1344 (N.D. Ga. 2004), *reversed on other grounds*, *Williams v. Mohawk Indus. Inc.*, 411 F.3d 1252 (11th Cir. 2005), is instructive. In *Williams*, the complaint alleged predicate acts involving violations of the Immigration and Nationality Act. *Williams*, 314 F.Supp.2d at 1338-39. The defendants moved for dismissal of the complaint on the basis that the predicate acts alleged failed to meet Rule

9(b)'s heightened pleading requirement. *Id*. at 1343. The district court rejected the defendant's contention holding that because the complaint did not sound in fraud, the plaintiff asserting a RICO claim need only comply with the general pleading requirements of Fed. R. Civ. P. 8. *Id*. at 1344. The Court found that "the better approach, and certainly the majority approach, is to apply the liberal pleading standards of Rule 8 to RICO actions involving non-fraud predicate activities." *Id*.; see also *Planned Parenthood of Columbia/Willamette, Inc. v. Am. Coalition of Life Activists,* 945 F.Supp. 1355, 1380 n. 25 (D.Or.1996) (finding Rule 9(b) inapplicable where predicate acts are extortion and coercion); *United States v. Int'l Bhd. of Teamsters,* 708 F.Supp. 1388, 1395-96 (S.D.N.Y.1989), *reversed on other grounds*, (adopting the reasoning of courts that limit the application of Rule 9(b) to fraud based RICO claims). Since the predicate acts that form the basis for Plaintiff' Civil RICO claims are not based upon "averments of fraud," they need only meet Rule 8 pleading requirements.

## VI. The Allegations that Sound in Fraud Meet Rule 9(b)'s Heightened Pleading Requirement Since There Were Countless Kickbacks Over an Extended Period

Each of the Defendants argue that Plaintiff's claims should be dismissed because purportedly the allegations of the Complaint are not defendant-specific and, as such, Plaintiff failed to meet Rule 9(b)'s heightened pleading requirement. This argument runs contrary to the law. First, as explained above, the predicate acts of the Club Defendants do not sound in fraud and need not be pleaded with heightened particularity. Second, for those allegations that sound in fraud, Rule 9(b) is less stringently applied since the alleged kickbacks occurred countless times over an extended period of time, and the information is largely within the control of the defendants.

### a. Since the Kickback Scheme Occurred Over an Extended Period of Time and the Acts Were Numerous, Rule 9(b) is Less Stringently Applied

Federal courts have recognized that if the alleged fraud occurred over an extended period of time, and the acts were numerous, the specificity requirements under Rule 9 will be less stringently applied. *Anthony Distrib., Inc. v. Miller Brewing Co.*, 904 F. Supp. 1363, 1366 (M.D.

Fla. 1995). This relaxed requirement is applied where "strict application of Rule 9(b) could result in substantial unfairness to private litigants who could not possibly have detailed knowledge of all the circumstances surrounding the alleged fraud." *NCR Credit Corp. v. Reptron Elec., Inc.*, 155 F.R.D. 690, 692 (M.D. Fla. 1994); see also *Wendt v. Handler, Thayer & Duggan, LLC*, --- F.Supp.2d ----, 2009 WL 1308532, *9 (N.D. Ill. May 11, 2009) (stating that "[a]lthough individualized information about the role of each defendant in the fraud is generally required, 'the particularity requirement of Rule 9(b) must be relaxed where the plaintiff lacks access to all facts necessary to detail his claim.'"); *Jepson, Inc. v. Makita Corp.*, 34 F.3d 1321, 1328 (7th Cir.1994) (finding that when details of the fraud "are within the defendant's exclusive knowledge," specificity requirements are less stringent).

In this case, Plaintiff Trapp, like thousands of other visitors to Las Vegas, could not possibly have "detailed knowledge of all of the circumstances surrounding the alleged fraud." Nor is such detailed knowledge required of him at this stage of the litigation. Since details of the kickback scheme are largely within the control of the Defendants and Plaintiff has not had any opportunity to gather additional facts in support of his position, it is enough for Trapp to provide a "general outline" of the kickback scheme. *Wendt v. Handler, Thayer & Duggan, LLC*, --- F.Supp.2d ----, 2009 WL 1308532, *9 (N.D. Ill. May 11, 2009); *Cf, Solomon v. Saril Apparel, Ltd.,* 1993 U.S. Dist. LEXIS 14189, 1993 WL 404177 (S.D.N.Y. 1993) (motion to dismiss ERISA claim based on delinquent contributions for failing to plead fraud with particularity denied since facts concerning the alleged failure to contribute were within defendants' knowledge and discovery would provide additional information about the fraud).

**b.     The Complaint Identifies Each Defendants Role in the Kickback Scheme**

The Ninth Circuit has found that in a fraud suit alleging a scheme among several actors, Rule 9(b) is met when the plaintiffs "identify the role of each defendant in the alleged fraudulent scheme." *Swartz v. KPMG LLP*, 476 F.3d 756, 764-65 (9th Cir. 2007) (quoting *Moore*, 885 F.2d at 541). In fact, a plaintiff may also satisfy 9(b) where several forms of misrepresentation and deception are alleged in which the defendant engaged, and it is plead the defendant knew about

the fraud and actively profited from the fraud. *See e.g. Newcal Indus., Inc. v. Ikon Office Solution*, 513 F.3d 1038 (9th Cir. 2008) (finding Rule 9(b) satisfied where defendant allegedly "knew about the fraud, participated in gathering profits from the fraud and did, in fact, profit from the fraud"); *see also Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101, 1119-20 (C.D. Cal. 2003).

As the Club Defendants' role in the kickback scheme is set forth in detail, the Complaint is sufficiently specific. The Complaint specifies the date, place (origin and destination) and content of the allegedly fraudulent statements to which Trapp was subjected. (Compl. ¶¶ 63-73.) At the very least, Plaintiff sufficiently pleads the Club Defendants knew of the misstatements made by the driver syndicates/enterprises, and actively profited from those misstatements, by charging diverted customers such things as inflated cover charges and other fees. (Compl. ¶¶ 53, 55, 91.) Certainly, given the circumstances of the alleged kickback scheme, Plaintiff's allegations give the Club Defendants sufficient notice of the claims to allow them to prepare a defense. *Id.* (citing *Ross v. Bolton,* 904 F.2d 819, 823 (2d Cir. 1990)); *see also Center Cadillac,* 808 F. Supp. at 229 (where the complaint sufficiently detailed the nature and mechanics of the fraudulent scheme, plaintiffs not required to plead the exact time, place and content of each communication).

In the end, "Rule 9(b)'s particularity requirement must be read in harmony with Rule 8 … requiring a 'short and plain' statement of the claim. *Ranger v. T-Mobile USA, Inc*., 2009 WL 416003, *2 (C.D. Cal. Feb. 19, 2009) (*citing Spiegler v. Home Depot U.S.A., Inc*., 552 F.Supp.2d 1036, 1044 (C.D. Cal. 2008)). The requirement is satisfied if the complaint "identifies the circumstances constituting fraud so that a defendant can prepare an adequate answer from the allegations." *Id*., citing *Moore v. Kayport Packaging Exp., Inc.,* 885 F.2d 531, 540 (9th Cir.1989). Such an approach is contemplated by Rule 11(b)(3), which allows more flexibility in pleadings, by allowing pleadings based on evidence reasonably anticipated after further investigation or discovery. See, e.g., *Corley v. Rosewood Care Center, Inc. of Peoria*, 142 F.3d 1041, 1050-51 (7th Cir. 1998) (relaxing particularity requirement of Rule 9(b) where RICO

plaintiff lacks access to all facts necessary to detail claim); see also *Rotella v. Wood*, 528 U.S. 549, 561 (2000) (noting that Rule 11(b)(3) provides flexibility which "allow[s] pleadings based on evidence reasonably anticipated after further investigation or discovery"). Hence, pleading factual allegations based upon information and belief, as alleged in Plaintiffs' Complaint in certain of the RICO allegations against the Club Defendants (Compl. ¶¶ 54, 71, 72, 75, and 141), is entirely proper.

In *Neubronner v. Miliken, 6* F.3d 666, 672 (9th Cir. 1993), the Ninth Circuit indicated that while the plaintiff could allege allegations of fraud in a complaint on information and belief where the information was particularly in the possession of the other party, in order to satisfy the obligations of Fed.R.Civ.P. 9(b), the plaintiff was required to "state the factual basis for the belief." *Id.*, citing *Wool*, 818 F.2d at 1439; *Moore*, 885 F.2d at 540; *DiVittorio, 8*22 F.2d at 1247-48; *In re Worlds of Wonder Securities Litigation, 694 F.Supp. 1427, 1433 (N.D. Cal. 1988)*. Plaintiffs have alleged the basis for their belief in the form of public reportage, public statements and news investigations. (Compl. ¶¶ 56, 57, 58, and 60.) This alone should be enough to allow the pleading to stand. Nothing more is needed for the Defendants to answer the allegations of the Complaint.

## VII. The Juridical Link Doctrine Provides a Basis to Allow the Complaint to Stand Against Defendants For Whom No Specific Conduct Is Alleged

The Club Defendants' other main argument in support of dismissal is that Plaintiff lacks standing against them since he only allegedly dealt with Defendant Spearmint Rhino. Plaintiff does not contest the Club Defendants' contention that a party must have standing to sue before a suit may progress. However, courts have held that where a plaintiff has a cause of action against a single defendant, that plaintiff can maintain an action against defendants who have engaged in similar conduct when there is evidence of a conspiracy amongst the defendants or when there is a juridical link between the defendants. *La Mar v. H & B Novelty & Loan Co.,* 489 F.2d 461, 466 (9th Cir. 1973).

A "juridical link" is some legal relationship which relates all defendants in such a way that a single resolution of the dispute is preferred to a multiplicity of similar actions. *Id.* at 676. *Accord*, *In re Intel Sec. Litig.*, 89 F.R.D. 104, 121 (N.D. Cal. 1981). Initially, the juridical link doctrine was applied most often in cases against government officials where the defendants were charged with enforcing or uniformly acting in accordance with a statute or common practice of statewide application. *See, e.g, Broughton v. Brewer*, 298 F. Supp. 260 (S.D. Ala. 1969). The doctrine has since been more broadly applied to private parties who undertake a common course of conduct. *See, e g., In re Computer Memories Securities Litigation*, 111 F.R D 675, 681 (N D. Cal. 1986) (applying juridical link exception to standing requirement where defendant underwriters entered into agreement that bound them to common course of conduct).

In *La Mar,* the Ninth Circuit explained that the typicality requirement of Fed. R. Civ. P. 23 cannot be satisfied where the named plaintiff would not have a cause of action against the defendant on his own. *Id.* at 465. However, the Court carved out two exceptions, stating that the requirement was met in cases where there exists a conspiracy amongst the defendants or "in instances in which all defendants are juridically related in a manner that suggests a single resolution of the dispute would be expeditious." *Id.* at 466.

To be sure, the named plaintiff in a class action may assert claims against all defendants, even those with whom the plaintiff had no direct dealings,[1] in situations where "all injuries are

---

[1] The juridical link is nothing but the flip side of a "defendant class" permitted under Rule 23. As FRCP 23 recognizes "one or more members of a class may sue *or be sued* as representative parties of behalf of all," provided the requisites of the rule are met. Traditionally, the certification of a defendant class is to enhance the effectiveness of declaratory or injunctive relief with respect to numerous defendants who are engaged in the same or similar practices. Newberg on Class Actions § 4.45 at 4-182 (3d ed.). *See also Alvarado Partners L.P. v. Mehta*, 130 F.R.D. 673, 675 (D.Colo. 1990) (Defendant class of 33); *In re Activision Secs. Litigation*, 621 F.Supp. 415 (D.C. Cal. 1985) (agreement among underwriters binding them together for purposes of the offering was sufficient to certify a defendant class upon which a single suit would most expeditiously resolve the dispute);. *In re Alexander Grant & Co. Litig.* 110 F.R.D. 528 (S.D. Fla. 1986) (plaintiff savings and loan association successfully sought certification of defendant class of past and present partners of national accounting firm in action alleging violations of securities and RICO laws); *In re Phar Mor, Inc. Secs. Litigation*, 875 F.Supp. 277 (D.C.Pa 1994) (partners and principals of accounting firm certified as defendant class involving same conduct).

KAEMPFER CROWELL RENSHAW
GRONAUER & FIORENTINO
Seventh Floor
3800 Howard Hughes Parkway
Las Vegas, Nevada 89169

the result of a conspiracy or concerted scheme between the defendants at whose hands the class suffered injury" and "in which all defendants are juridically related in a manner that suggests a single resolution of the dispute would be expeditious." *La Mar v. H & B Novelty & Loan Co*. at 466; see also *Fernandez v. Takata Seat Belts, Inc.*, 108 P.3d 917, 921 (Ariz. 2005) (recognizing that the juridical link doctrine applies to circumstances in which "'all the defendants took part in a similar scheme'... such that *it was 'appropriate to join as defendants even parties with whom the named class representative did not have direct contact*'") (emphasis added); *Cashman v. Nationwide Ins. Co. of America,* 2006 WL 908760 at *4 (D. Ariz. 2006); *In re Gap Stores Securities Litigation,* 79 F.R.D. 283, 293 (N.D. Cal. 1978); *Canady v. Allstate Insurance Co.*, 1997 WL 33384270 at *5-6 (W.D. Mo. 1997). As one district court properly found:

> There is an exception to [the requirement that representative plaintiffs must have individual standing to assert colorable claims against all members of the defendant class] where the defendant members are related by a concerted scheme, conspiracy, or juridical link, that is some legal relationship which relates all defendants in a way such that single resolution of the dispute is preferred to a multiplicity of similar actions.

*In re Enron Corp. Sec. Derivative & Erisa Litig.,* 2004 WL 405886 at *27 (S.D. Tex. 2004) (internal citation omitted) (emphasis added); *See also Thillens, Inc v Cmty Currency Exch Assoc.*, 97 F.R.D 668 at 675-76 (N.D. Ill 1983) ("The requirement that each named plaintiff must have a claim against each defendant may be waived where the defendant members are related by a conspiracy or 'juridical link.'"); *Popoola v MD-Individual Practice Association, Inc.* 230 F.R.D. 424, 432 (D.Md 2005) (noting that courts "have suggested that if all the defendants took part in a similar scheme that was sustained either by a contract or conspiracy, or was mandated by a uniform state rule, it is appropriate to join as defendants even parties with whom the named class representative did not have direct contact."

In the instant action, a unified policy links the Club Defendants. The Club Defendants implemented an illegal policy of paying kickbacks to drivers for diverting customers, which was promulgated and institutionalized over several years. This conduct has now become the status quo for the participating entities. The direct harm to the putative class was accomplished

through a conspiracy or concerted scheme conceived of, developed and maintained by the Club Defendants. Since Plaintiff has specifically detailed Defendant Spearmint Rhino's wrongful conduct (Compl. ¶¶ 127-130), inclusion of the other Club Defendants as party-defendants in this class action is appropriate regardless of whether Plaintiff individually had a direct relationship with each of them. The Complaint's allegations are sufficient, particularly at the pleading stage, to establish a juridical link between all of the Club Defendants and thus Complaint should stand as to all.

### VIII. In The Alternative, Plaintiff is Permitted to Join the Club Defendants As Defendants Under Rule 20

Federal Rule of Civil Procedure 20 provides yet another avenue for Plaintiff to assert claims against the Club Defendants in this matter. Rule 20 allows for the joinder of defendants as follows:

> Persons... may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions, or occurrences; and (B) any question of law or fact common to all defendants will arise in the action... Neither a plaintiff nor a defendant need be interested in obtaining or defending against all the relief demanded. The court may grant judgment to one or more plaintiffs according to their rights, and against one or more defendants according to their liabilities.

F.R.C.P. 20(a)(2)-(3).

Here, both prongs of Rule 20 for joinder of defendants are satisfied such that Plaintiff is permitted to name the Club Defendants as defendants in this matter. First, as described in the Complaint: any right to relief is asserted against [Defendants] jointly, arising out of the same transaction, occurrence, or series of transactions or occurrences. Second, there are numerous questions of law and fact common to all Defendants in this action. (Compl. ¶ 76.) Because Plaintiff's allegations more than meet the requirements for permissive joinder of defendants under Rule 20, the Club Defendants collectively are proper defendants in this case.

Case law affirms this result. In *Moore v. Comfed Say. Bank,* 908 F.2d 834 (11th Cir. 1990), the Eleventh Circuit held that in a class action where the named plaintiffs never had any contact with one of the defendants, but the transactions at issue arose out of the same series of

KAEMPFER CROWELL RENSHAW
GRONAUER & FIORENTINO
Seventh Floor
3800 Howard Hughes Parkway
Las Vegas, Nevada 89169

14

transactions, and the claims involved the same question of law and fact, a "proper construction" of Rule 20 provided "ample basis" for joining the defendants. Similarly, in *In re Tri-State Crematory Litigation,* 215 F.R.D. 660 (N.D. Ga. 2003), joinder of over fifty different defendants with which the named representatives did not have contracts was found to be proper under Rule 20 because all of class members' claims against the defendants arose out of a series of transactions or occurrences that had questions of law or fact common to all defendants. As in these cases, Rule 20 permissive joinder of the Club Defendants is appropriate.

### IX. The Violation of a Statue or Ordinance Comprises Particularized Harm

Defendants argue that Plaintiff has only alleged a "conjectural" or "hypothetical" violation of statutes, and has failed to demonstrate any "actual" or "particularized" harm. Treasures MTD, p. 7. With this argument, the Club Defendants conveniently ignore the specific allegations of the Complaint.

The conduct complained of is specifically outlawed by statute and ordinance. Nevada Revised Statute (N.R.S.) § 706.8846 states that a driver shall not: 1. deceive or attempt to deceive any passenger who rides or desires to ride in his taxicab; 2. convey or attempt to convey any passenger to a destination other than the one directed by the passenger. Further, Nevada Administrative Code (N.A.C.) § 706.552 requires that a taxicab driver shall not accept, directly or indirectly, a gratuity or any form of compensation from any person for diverting or attempting to divert a prospective customer from any commercial establishment, and shall not divert or attempt to divert a prospective customer from any commercial establishment.

Each of these laws is specific enough to provide for criminal sanctions for their violation. A "diversion" itself is sufficient to call into effect the police powers of the state. Conduct that is particularized enough to implicate law enforcement cannot be viewed as "conjectural" or "hypothetical." Trapp's allegations should be enough to show a "diversion" from the club of his choice (Play it Again, Sam), to another club that was not within his contemplation (Spearmint Rhino).

KAEMPFER CROWELL RENSHAW
GRONAUER & FIORENTINO
Seventh Floor
3800 Howard Hughes Parkway
Las Vegas, Nevada 89169

That the Club Defendants are not identified as the club to which Trapp was diverted, at the pleading stage, is of no moment. The allegations of the complaint must be accepted as true. Plaintiff alleges that the particular unlawful conduct he encountered, is and was, pervasive, endemic, and systematic throughout the Las Vegas area, and that the Club Defendants have engaged in that conduct. (Compl. ¶ 91 "The Club Defendants" [which, by definition, includes Treasures], "though false pretense, knowingly and designedly, and with the intent to cheat or defraud the customer, obtained additional admission from their customers, and knowingly and designedly paid the Drivers a kickback so that the Drivers would divert their customers from their otherwise intended and requested destination to the Club Defendant.") As described above, even Club Defendants with whom the named Plaintiff has had no direct relationship may be held to answer for conduct that is engaged in through a RICO enterprise, since Defendants are juridically linked, and Plaintiff's claims and that of the other class members, arise out of the same series of occurrences.

### X. Plaintiff's Allegations of Multiple Violations Against A Class Satisfies Nevada's Civil RICO "Two Crimes" Requirement

Treasures argues that the conduct complaint of by Trapp does not and cannot constitute the "two not isolated incidents related to racketeering." Treasures MTD p. 6. However, Treasures' argument demonstrates a misreading of the Complaint.

The Complaint alleges that Trapp was subjected to violations of several state and local laws. (Compl. ¶¶ 63-73.) The complaint further alleges that the conduct Trapp complained of is not limited to Trapp's single experience, (Compl. ¶¶ 2-5, 8, and 47-58) but rather, has affected thousands, perhaps tens of thousands, of visitors to Las Vegas. Plaintiff alleges that the practice is so pervasive that the Defendant Clubs pay out an estimated forty million dollars in illegal kickbacks per year. (Compl. ¶ 52.) These allegations of repeated violations more than meet the standard for pleading "at least two crimes related to racketeering that have the same or similar pattern, intents, results, accomplices, victims or methods of commission, or are otherwise

interrelated by distinguishing characteristics and are not isolated incidents." *Siragusa v. Brown*, 114 Nev. 1384, 1399. Treasures' arguments to the contrary should be summarily discounted.

## XI. The Complaint Adequately Pleads Illegal Activity

Defendant Déjà Vu incorrectly argues that Plaintiff's RICO claims fail because they are purportedly based upon "Clark County Ordinance 8.20.297, which was repealed in 2006 and no longer in effect." (Déjà vu MTD at p 7.) Déjà Vu goes on to argue that "the activity Plaintiff alleges cannot be considered illegal and cannot be the basis for his RICO claim. (*Id*.) Déjà Vu is wrong as Plaintiff alleges violations of other state statutes and county ordinances.

As explained above, Plaintiff sufficiently alleges a violation of NRS 207.360 (9): "Taking property from another under circumstances not amounting to robbery." Furthermore, the Complaint references several other statutes and ordinances which prohibit the conduct to the same effect as the repealed statute. See e.g. NAC 706.552 (Drivers: Prohibited And Required Acts) Compl. ¶¶ 6, 76, 150, 151; and .NRS 706.8846 (Prohibited Acts Concerning Destination Of Passenger) Complaint, ¶¶ 6, 76, 149, 151. Not surprisingly, Déjà Vu makes no mention of these other statutes and ordinances.

## XII. Class Certification Determination Is Not Ripe, Nor Is It Properly Decided Upon In A Rule 12(B)(6) Motion

As part of their motion to dismiss under Rule 12(b)(6), Déjà Vu strangely argues that Plaintiff failed to show numerosity in the instant action since he "has only presented the incident that he experienced." (Déjà Vu MTD, p. 4) Apparently, Déjà Vu misunderstands that class actions are representative in nature. To the extent Déjà Vu seeks a finding on the class certification issue at this stage of the proceeding, any finding at this point would be improper. Indeed, Rule 23 (c) provides:

> (A) Time to Issue. At an early practicable time after a person sues or is sued as a class representative, the court must determine by order whether to certify the action as a class action.

Defendant's attempt to seek denial of certification in a motion to dismiss, though it may be "early" in the litigation, is untimely and not "practicable."

The Notes of Advisory Committee on 2003 amendments state:

> Paragraph (1). Subdivision (c)(1)(A) is changed to require that the determination whether to certify a class be made "at an early practicable time." The "as soon as practicable" exaction neither reflects prevailing practice nor captures the many valid reasons that may justify deferring the initial certification decision. See Willging, Hooper & Niemic, Empirical Study of Class Actions in Four Federal District Courts: Final Report to the Advisory Committee on Civil Rules 26-36 (Federal Judicial Center 1996).

Incredibly, in their motion to dismiss, Déjà Vu specifically recognizes that the determination of class certification must be conducted after a "rigorous analysis." (Déjà Vu MTD, p. 4); *In re Initial Public Offering Sec. Litig.,* 471 F.3d 24, 33 (2nd Cir. 2006). Indeed, in each of the cases cited by Déjà Vu, the Court made its ruling in the context of a motion for class certification—not pursuant to a Rule 12(b)(6) motion to dismiss. It is simply not appropriate to make the class certification determination on the pleadings. See e.g., *Walker v. World Tire Corp., Inc.* 563 F.2d 918, 921 (C.A. Mo. 1977) ("The propriety of class action status can seldom be determined on the basis of the pleadings alone. Where, however, the pleadings themselves do not conclusively show whether the Rule 23 requirements are met, the parties must be afforded the opportunity to discover and present documentary evidence on the issue.") Déjà Vu's broad stroke attack on every aspect of class certification should be held in abeyance until the issues are properly joined and briefed.

## XIII. Prayer For Right To Amend In The Alternative

After a response to a complaint has been made, "a party may amend the party's pleading only by leave of court or by written consent of the adverse party." Fed. R. Civ. P. Rule 15(a). "Dismissal with prejudice and without leave to amend is not appropriate unless it is clear . . . that the complaint could not be saved by amendment." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (permitting the plaintiffs to amend because plaintiffs' claims were not frivolous and were pled in good faith). Thus, if the Court disagrees with Plaintiff's arguments and believes that the Complaint should be dismissed, Plaintiff respectfully requests

the right to amend the Complaint so that he may plead the causes of action alleged in a manner found proper by this Court.

## XIV. Conclusion

For the foregoing reasons, Plaintiff Theodore Trapp, respectfully requests that the Court (1) deny the Motion to Dismiss Under Rule 12(b)(6) or For More Definite Statement Under Rule 12(e) of Defendant D.2801 Westwood, Inc., (2) deny the Motion to Dismiss Pursuant to Rule 12(b)(6) of Defendants Déjà Vu Showgirls of Las Vegas, LLC, Little Darlings of Las Vegas, LLC, and Las Vegas Entertainment, LLC, and (3) award such other and further relief as the Court deems equitable and just.

Dated: October 9, 2009

**THEODORE TRAPP**, individually and on behalf of all others similarly situated

By: /s/ Rafey S. Balabanian
Rafey Balabanian (ARDC No. 6285687) (*Pro Hac Vice*)
Email: rbalabanian@kamberedelson.com
KAMBEREDELSON LLC
350 North LaSalle, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

## CERTIFICATE OF SERVICE

I, Rafey S. Balabanian, an attorney, certify that on October 9, 2009, I served the above and foregoing, ***Plaintiff's Response in Opposition to the Motion to Dismiss Under Rule 12(b)(6) of Defendants Déjà Vu Showgirls of Las Vegas, LLC, Little Darlings of Las Vegas, LLC, and Las Vegas Entertainment, LLC and the Motion to Dismiss Under Rule 12(b)(6) Or For More Definite Statement Under Rule 12(e) of Defendant D.2801 Westwood, Inc.,*** by causing true and accurate copies of such paper to be filed and transmitted to all counsel of record, via the Court's CM/ECF electronic filing system, on this the 9th day of October, 2009.

           /s/ Rafey S. Balabanian